KC    JUDGE MANNING
MAGISTRATE JUDGE COLE

FILED

DECEMBER 10, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

07 C 6938

Plan for the Settlement of Jurisdictional Disputes in the Construction Industry.

## ARTICLE XIV

### JOB STEWARD

The job steward shall be selected by the Union from among the members of the bargaining unit employed at the job site at the time of selection.  The job steward shall be a working employee. The Union shall have the right to designate which employee shall be the steward or acting steward.  The job steward shall have no special employment priority or security.  In case of any minor difficulty, the steward shall be permitted reasonable time to adjust same without pay deduction.

## ARTICLE XV

### SECTION 1 –  WAGE RATES AND FRINGE BENEFITS

The wage rates and fringe benefits for the respective classifications set forth below shall be effective on the dates indicated:

| FRINGE BENEFITS | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| HEALTH AND WELFARE | $5.15 | $5.40 | $5.70 | $6.05 | $6.45 | $6.85 |
| PENSION | $4.00 | $4.25 | $4.50 | $4.85 | $5.15 | $5.60 |
| VACATION | $1.60 | $1.70 | $1.80 | $1.80 | $1.80 | $1.90 |
| APPRENTICESHIP | $ .45 | $ .50 | $ .55 | $ .60 | $ .65 | $ .70 |
| INDUSTRY ADVANCEMENT FUND AND CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 |

46

|                                                                 | 6/1/01  | 6/1/02  | 6/1/03  | 6/1/04  | 6/1/05  | 6/1/06  |
|-----------------------------------------------------------------|---------|---------|---------|---------|---------|---------|
| CRAFT FOREMAN                                                   | $34.25  | $36.05  | $37.90  | $39.80  | $41.75  | $43.75  |
| [5]* Certified Friction Crane Operator Field Mechanics and Field Welders | $33.25  | $35.05  | $36.90  | $38.80  | $40.75  | $42.75  |
| [6]* Certified Crane Operator requiring an Oiler               | $32.25  | $34.05  | $35.90  | $37.80  | $39.75  | $41.75  |
| [6]* All Other Certified Crane Operators Requiring No Oiler    | $31.25  | $33.05  | $34.90  | $36.80  | $38.75  | $40.75  |
| Dowell Machine with Air Compressor                             | $31.25  | $33.05  | $34.90  | $36.80  | $38.75  | $40.75  |
| Certified Finish Blade                                         | $_____  | $33.05  | $34.90  | $36.80  | $38.75  | $40.75  |
| Certified Track Excavator                                     | $_____  | $33.05  | $34.90  | $36.80  | $38.75  | $40.75  |
| [7]+ GRADALL and machines of like nature                      | $31.25  | $33.05  | $34.90  | $36.80  | $38.75  | $40.75  |

## CLASS I

|                       | 6/1/01  | 6/1/02  | 6/1/03  | 6/1/04  | 6/1/05  | 6/1/06  |
|-----------------------|---------|---------|---------|---------|---------|---------|
| [8]*ASPHALT PLANT     | $30.25  | $32.05  | $33.90  | $35.80  | $37.75  | $39.75  |

---

[5]* City of Chicago Crane License and/or Local 150 Advanced Crane Certification.

[6]* City of Chicago Crane License and/or Local 150 Advanced Crane Certification.

[7]+ Requires Oiler pursuant to Article VIII

[8]* Requires Oiler

47

## CLASS I

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| ASPHALT HEATER AND PLANER COMBINATION | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* ASPHALT HEATER SCARFIRE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ASPHALT SPREADER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* AUTOGRADER/GOMACO or other similar type machines | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* ABG PAVER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* BACKHOES with Caisson attachment | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| BALLAST REGULATOR | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* BELT LOADER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* CAISSON RIGS | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| CAR DUMPER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* CENTRAL REDI-MIX PLANT | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| COMBINATION BACKHOE FRONT ENDLOADER MACHINE (1 cu. yd. backhoe bucket or over or with attachments) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* CONCRETE BREAKER (Truck Mounted) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| CONCRETE CONVEYOR | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* CONCRETE PAVER Over 27E cu. ft. | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]*CONCRETE PLACER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |

48

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

## CLASS I

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| CONCRETE TUBE FLOAT | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [7]+ CRANES, ALL ATTACHMENTS (NON CERTIFIED) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* CRANES, HAMMERHEAD, LINDEN, PECO & machines of a like nature | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| CRETER CRANE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| CRUSHER, STONE, ETC. | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| DERRICKS, ALL | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| DERRICK BOATS | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* DERRICKS, TRAVELING | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* DREDGES | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ELEVATORS, OUTSIDE TYPE RACK & PINION AND SIMILAR MACHINES | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [7]+ FORMLESS CURB AND GUTTER MACHINE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| GRADER, ELEVATING | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| GRADER, MOTOR GRADER, MOTOR PATROL AUTO PATROL, FORM GRADER, PULL GRADER, SUBGRADER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |

49

## CLASS I

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| [8]* GUARD RAIL POST DRIVER TRUCK MOUNTED | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| HOISTS, ONE, TWO, & THREE DRUM | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [7]+ HYDRAULIC BACKHOES | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [7]+ BACKHOES WITH SHEAR ATTACHMENTS | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| MUCKING MACHINE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* PILE DRIVERS AND SKID RIG | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| PRE-STRESS MACHINE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* PUMP CRETES DUAL RAM (requires frequent lubrication and water) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* ROCK DRILL-CRAWLER OR SKID RIG | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* ROCK DRILL — TRUCK MOUNTED | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ROCK/TRACK TAMPER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* ROTO MILL GRINDER (36" and over) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ROTO MILL GRINDER (less than 36") | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* SLIP-FORM PAVER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* SOIL TEST DRILL RIG (Truck Mounted) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |

50

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

| CLASS I | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| STRADDLE BUGGIES | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| HYDRAULIC TELESCOPING FORM (tunnel) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* TRACTOR DRAWN BELT LOADER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| TRACTOR DRAWN BELT LOADER with attached pusher (two engineers) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| TRACTOR WITH BOOM | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| TRACTAIRE WITH ATTACHMENTS | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* TRAFFIC BARRIER TRANSFER MACHINE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [7]+ TRENCHING | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| TRUCK MOUNTED CONCRETE PUMP with boom | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [9]** RAISED OR BLIND HOLE DRILLS (tunnel shaft) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* UNDERGROUND BORING and/or MINING MACHINES 5 ft. in diameter and over tunnel, etc. | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| UNDERGROUND BORING and/or MINING MACHINES under 5 ft. | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8]* WHEEL EXCAVATOR | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| WIDENER (Apsco) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |

---

[9]** To be manned pursuant to the letter dated May 2, 1977

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

| CLASS II | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| [8]* BATCH PLANT | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| BITUMINOUS MIXER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| BOILER AND THROTTLE VALVE | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| BULLDOZERS | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CAR LOADER TRAILING CONVEYORS | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| COMBINATION BACKHOE FRONT ENDLOADER MACHINE (less than 1 cu. yd. backhoe bucket or over with attachments) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| COMPRESSOR AND THROTTLE VALVE | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| COMPRESSOR, Common Receiver (3) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE BREAKER OR HYDRO-HAMMER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE GRINDING MACHINE | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE MIXER OR PAVER 7S series to and including 27 cu.ft. | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE SPREADER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE CURING MACHINE Burlap machine, Belting machine and Sealing machine | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

## CLASS II

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| CONCRETE WHEEL SAW | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONVEYOR MUCK CARS (Haglund or similar type) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| DRILLS, (all) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| FINISHING MACHINE – Concrete | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| GREASER ENGINEER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| HIGHLIFT SHOVELS or FRONT ENDLOADER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| HOIST-SEWER DRAGGING MACHINE | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| HYDRAULIC BOOM TRUCKS (all attachments) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| HYDRO-BLASTER(requires two operators) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| [10++] LASER SCREED | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| ALL LOCOMOTIVES, DINKY | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| [10++] OFF-ROAD HAULING – UNITS (including articulating) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| [10++] Non Self-Loading Ejection Dump | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| PUMP CRETES: Squeeze cretes – screw type pumps, Gypsum Bulker and pump | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |

---

[10++] These wage classifications become effective June 1, 2001, and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150.

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

| CLASS II | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| ROLLER, ASPHALT | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| ROTORY SNOW PLOWS | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| ROTOTILLER, SEAMAN, etc. Self-propelled | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SCOOPS-TRACTOR DRAWN | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SELF-PROPELLED - COMPACTOR | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SPREADER-CHIP-STONE, etc. | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SCRAPER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SCRAPER - prime mover in tandem (regardless of size) (Add $1.00 to Class II hourly rate for each hour and for each machine attached thereto, add $1.00 to Class II hourly rate for each hour) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| TANK CAR HEATER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| TRACTORS, PUSH, PULLING Sheeps foot, Disc, Compactor, etc. | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| TUG BOATS | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| MECHANIC-WELDERS working in a permanent shop. Such mechanics when working as field mechanics shall receive the Field Mechanics rate of pay for the entire day. | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |

54

This clause shall not apply to work performed within the construction area.

| CLASS III | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| BOILERS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| BROOMS, ALL POWER PROPELLED | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| CEMENT SUPPLY TENDER | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| COMPRESSOR, Common Receiver (2) | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| CONCRETE MIXER (Two bag and over) | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| CONVEYOR, PORTABLE | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| FARM-TYPE TRACTORS used for mowing, seeding, etc. | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| FIREMAN ON BOILERS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| FORKLIFT TRUCKS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| GROUTING MACHINE | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| HOISTS, AUTOMATIC | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| HOISTS, ALL ELEVATORS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| HOISTS, TUGGER SINGLE DRUM | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| JEEP DIGGERS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| 10++ LOW BOYS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| PIPE JACKING MACHINES | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| POST-HOLE DIGGER | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |

Excavators Inc
HHU 9-8-01 Fal
Steven M. Cisco

## CLASS III

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| POWER SAW, CONCRETE, Power Driven | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| PUG MILLS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| ROLLERS, other than asphalt | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| SEED AND STRAW BLOWER | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| STEAM GENERATORS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| STUMP MACHINE | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| WINCH TRUCK with "A" Frame | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| WORK BOATS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| TAMPER-form-motor driven | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |

## CLASS IV

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| AIR COMPRESSOR – small 250 and under (1 to 5 not to exceed a total of 300 ft.) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| AIR COMPRESSOR – large over 250 | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| COMBINATION – Small Equipment Operator | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| DIRECTIONAL BORING MACHINE | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| GENERATORS – Small 50 kw and under | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

| CLASS IV | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| GENERATORS – Large over 50 kw | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| HEATERS, Mechanical | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| HYDRAULIC POWER UNIT (pile driving, extracting, or drilling) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| HYDRO-BLASTER (requires two operators) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| LIGHT PLANTS, all (1 through 5) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| PUMPS, over 3" (1 to 3 not to exceed a total of 300 ft.) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| PUMPS, WELL POINTS | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| TRACTAIRE | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| WELDING MACHINES (2 through 5) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| WINCHES, 4 small electric drill winches | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |

| CLASS V | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| SKIDSTEER LOADER (all) | $25.05 | $26.85 | $28.70 | $30.60 | $32.55 | $34.55 |
| BRICK FORKLIFTS | $25.05 | $26.85 | $28.70 | $30.60 | $32.55 | $34.55 |
| OILERS | $25.05 | $26.85 | $28.70 | $30.60 | $32.55 | $34.55 |
| 10++ DIRECTIONAL BORING MACHINE LOCATOR | $25.05 | $26.85 | $28.70 | $30.60 | $32.55 | $34.55 |

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

| WINTER MAINTENANCE WORK | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| MAINTENANCE work done in shop or yard, excluding Master Regular Mechanics, during period from December 1 to March 31 | $25.80 | $27.60 | $29.45 | $31.35 | $33.30 | $35.30 |

## HAZMAT PAY

Level A   Add $3.00 to Classification

Level B   Add $2.00 to Classification

Level C   Add $1.00 to Classification

## SECTION 2

### FRINGE BENEFITS FOR FIRST AND SECOND YEAR APPRENTICES

| FRINGE BENEFITS | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| HEALTH AND WELFARE | $5.15 | $5.40 | $5.70 | $6.05 | $6.45 | $6.85 |
| PENSION | $2.45 | $2.70 | $2.95 | $3.30 | $3.60 | $4.05 |
| VACATION | $0.85 | $0.95 | $1.05 | $1.05 | $1.05 | $1.15 |
| APPRENTICESHIP | $0.45 | $0.50 | $0.55 | $0.60 | $0.65 | $0.70 |
| INDUSTRY ADVANCEMENT FUND AND CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 |

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

## FRINGE BENEFITS FOR THIRD AND FOURTH YEAR APPRENTICES

| FRINGE BENEFITS | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| HEALTH AND WELFARE | $5.15 | $5.40 | $5.70 | $6.05 | $6.45 | $6.85 |
| PENSION | $4.00 | $4.25 | $4.50 | $4.85 | $5.15 | $5.60 |
| VACATION | $1.60 | $1.70 | $1.80 | $1.80 | $1.80 | $1.90 |
| APPRENTICESHIP | $0.45 | $0.50 | $0.55 | $0.60 | $0.65 | $0.70 |
| INDUSTRY ADVANCEMENT FUND and CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 | $0.18 |

## WAGES FOR APPRENTICES

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| First Year | $15.45 | $16.35 | $17.30 | $18.25 | $19.25 | $20.30 |
| Second Year | $19.70 | $20.85 | $22.05 | $23.30 | $24.55 | $25.85 |
| First half of Third Year | $22.70 | $24.05 | $25.45 | $26.85 | $28.35 | $29.85 |
| Second half of Third Year | $24.20 | $25.65 | $27.15 | $28.65 | $30.20 | $31.80 |
| First half of Fourth Year | $25.75 | $27.25 | $28.85 | $30.45 | $32.10 | $33.80 |
| Second half of Fourth Year | $27.25 | $28.85 | $30.50 | $32.25 | $34.00 | $35.80 |

At the end of the fourth year, apprentices shall become Journeymen Engineers and shall be paid pursuant to the terms of the wage classifications set forth in this Agreement.

59

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

In no event shall the rate of pay for apprentices exceed that rate provided for the classification of machine the apprentice may be operating as contained in Article XV of this Agreement.

Apprentices shall be paid according to the Apprenticeship Introduction Slip issued to the Employer and the Apprentice at the time the apprentice is dispatched by the Union to the Employer.

The Introduction Slip must indicate the progress status of the apprentice. As the apprentice progresses in status, he shall be paid pursuant to the rates set forth in this Agreement.

In addition to the above provisions for rates of pay, fringe benefit contributions shall be as provided for in this Agreement covering work being performed by said apprentices.

## ESTABLISHMENT OF JOINT LABOR MANAGEMENT COMMITTEE FOR CERTIFICATION.        TRAINING / TESTING DATA BASE

The Parties agree to establish a Labor Management Committee to develop and implement a program whereby Operating Engineers will be certified as being competent to operate most of the types of equipment covered by this Agreement. The Labor Management Committee created under this provision shall establish the standards and criteria for certification of competency. The Labor Management Committee will have the authority to add new equipment to the certified Operator list, when mutually agreed to. The premium pay for all additional certified classifications will be $1.00 per hour over the regular hourly rate.

A website will be developed and implemented to validate testing and training of the bargaining unit members.

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

## ARTICLE XVI

**SECTION 1 – WELFARE FUND**

Effective June 1, 2001, the Employer shall pay FIVE DOLLARS AND FIFTEEN CENTS ($5.15) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2001, the Employer shall pay FIVE DOLLARS AND FIFTEEN CENTS ($5.15) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Fund.

Effective June 1, 2002, the Employer shall pay FIVE DOLLARS AND FORTY CENTS ($5.40) per hour for each for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2002, the Employer shall pay FIVE DOLLARS AND FORTY CENTS ($5.40) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Fund.

Effective June 1, 2003, the Employer shall pay FIVE DOLLARS AND SEVENTY CENTS ($5.70) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2003, the Employer shall pay FIVE DOLLARS AND SEVENTY CENTS ($5.70) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Fund.

Effective June 1, 2004, the Employer shall pay SIX DOLLARS AND FIVE CENTS ($6.05) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Excavators Inc.
HHU 9-8-01 Fni
Steven M. Cisco

Effective June 1, 2004, the Employer shall pay SIX DOLLARS AND FIVE CENTS ($6.05) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Fund.

Effective June 1, 2005, the Employer shall pay SIX DOLLARS AND FORTY-FIVE CENTS ($6.45) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2005, the Employer shall pay SIX DOLLARS AND FORTY-FIVE CENTS ($6.45) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Fund.

Effective June 1, 2006, the Employer shall pay SIX DOLLARS AND EIGHTY-FIVE CENTS ($6.85) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2006, the Employer shall pay SIX DOLLARS AND EIGHTY-FIVE CENTS ($6.85) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Fund.

The Welfare Fund maintains a place of business at 6150 Joliet Road, Countryside, Illinois 60525, or at such other place designated by the Trustees. Contributions of the Employer shall be forwarded to such business office together with report forms supplied for such purpose not later than the tenth (10th) of the following month.

Contributions to the aforesaid Health and Welfare Fund shall not constitute or be deemed wages due to the employee.

It is understood and agreed that the Employer shall be bound to the terms and provisions of the Agreement and Declaration of

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

Trust of the Midwest Operating Engineers Welfare Fund, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection.

Anything herein contained to the contrary notwithstanding, an Employer required to make contributions on behalf of a "Supervisor" shall make contributions on the basis of 168 hours each month.

The parties recognize that individuals employed by corporations who are party to this Agreement may perform both bargaining unit and non-bargaining unit work. Certain of these employees receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours which are spent performing bargaining unit work. It is therefore agreed that when an employee who is employed by a corporation, performs both bargaining unit work and non-bargaining unit work and who:

A. Is a shareholder, officer and/or director of the corporation or

B. Is a relative (father, mother, son, daughter, brother, sister, husband, wife, in-law) of a shareholder, officer and/or director of the corporation, the bargaining parties have agreed that any shareholder/relative reporting under this clause must report 150 hours per month twelve (12) months a year, irrespective

63

of the amount of work they perform or the amount of compensation they receive in any individual month.

Corporate officers and their children will be exempt from this provision when they operate equipment doing bargaining unit work during an emergency such as fire, flood or to save life or property.

The exemptions provided herein do not relieve the Employer from the obligations of Article IX, Section 3 Regular Assigned Engineers of this Agreement.

**FAMILY AND MEDICAL LEAVE ACT (FMLA)** – the Employer of any employee who is eligible for and requests leave under the Family and Medical Leave Act (FMLA) shall promptly notify the Health and Welfare Fund Office, and before the leave commences, if possible. Employers shall make Health and Welfare contributions for any employee who is taking leave under the FMLA on the basis of forty (40) hours per week.

**SECTION 2 – PENSION FUND**

It is understood and agreed that there shall be continued a Trusteed Pension Plan known as the Midwest Operating Engineers Pension Fund.

Effective June 1, 2001, the Employer shall be liable to contribute FOUR DOLLARS AND NO CENTS ($4.00) per hour for which the employee receives wages under the terms of this Agreement and shall pay FOUR DOLLARS AND NO CENTS ($4.00) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the

64

provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2002, the Employer shall be liable to contribute FOUR DOLLARS AND TWENTY-FIVE CENTS ($4.25) per hour for which the employee receives wages under the terms of this Agreement and shall pay FOUR DOLLARS AND TWENTY-FIVE ($4.25) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2003, the Employer shall be liable to contribute FOUR DOLLARS AND FIFTY CENTS ($4.50) per hour for which the employee receives wages under the terms of this Agreement and shall pay FOUR DOLLARS AND FIFTY CENTS ($4.50) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2004, the Employer shall be liable to contribute FOUR DOLLARS AND EIGHTY-FIVE CENTS ($4.85) per hour for which the employee receives wages under the terms of this Agreement and shall pay FOUR DOLLARS AND EIGHTY-FIVE CENTS ($4.85) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any)

Excavators Inc
HHU 9-8-01 Fal
Steven M. Cisco

determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2005, the Employer shall be liable to contribute FIVE DOLLARS AND FIFTEEN CENTS ($5.15) per hour for which the employee receives wages under the terms of this Agreement and shall pay FIVE DOLLARS AND FIFTEEN CENTS ($5.15) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2006, the Employer shall be liable to contribute FIVE DOLLARS AND SIXTY CENTS ($5.60) per hour for which the employee receives wages under the terms of this Agreement and shall pay FIVE DOLLARS AND SIXTY CENTS ($5.60) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

For Apprentices see schedule in Article XV, Section 2.

The Pension Fund has been established and shall be administered in accordance with the Labor Management Relations Act of 1947 as amended.

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

Payments accompanied by monthly reports on forms provided for the same are due in the Pension Office, 6150 Joliet Road, Countryside, Illinois 60525, or such other place as designated by the Trustees, not later than the tenth (10th) of the following month for the preceding month.

Contributions to the Pension Trust Fund shall not constitute or be deemed wages due to the employee.

It is understood and agreed that the Employer shall be bound by the terms and provisions of the Agreement and Declaration of Trust of the Midwest Operating Engineers Pension Fund, and all amendments theretofore or hereafter made thereto, as though the same were fully incorporated herein.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection.

Anything herein contained to the contrary notwithstanding, an Employer required to make contributions on behalf of a "Supervisor" shall make contributions on the basis of 168 hours each month.

The parties recognize that individuals employed by corporations who are party to this Agreement may perform both bargaining unit and non-bargaining unit work. Certain of these employees receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours which are spent performing bargaining unit work. It is therefore agreed that when

67

Excavators Inc
HHU 9-4-01 Fnl
Steven M. Cisco

an employee who is employed by a corporation, performs both bargaining unit work and non-bargaining unit work and who:

A.    Is a shareholder, officer and/or director of the corporation or

B.    Is a relative (father, mother, son, daughter, brother, sister, husband, wife, in-law) of a shareholder, officer and/or director of the corporation, the bargaining parties have agreed that any shareholder/relative reporting under this clause must report 150 hours per month twelve (12) months a year, irrespective of the amount of work they perform or the amount of compensation they receive in any individual month.

Corporate officers and their children will be exempt from this provision when they operate equipment doing bargaining unit work during an emergency such as fire, flood or to save life or property.

The exemptions provided herein do not relieve the Employer from the obligations of Article IX, Section 3 Regular Assigned Engineers of this Agreement.

Commencing October 1, 2000, the Employer agrees to make payments to the Midwest Operating Engineers Pension Fund, in the amount (if any) determined by the Trustees of the Excess Benefit Fund.  Such contributions to the Excess Benefit Fund shall be an offset against the amounts otherwise due to be paid by the Employer to the Midwest Operating Engineers Pension Fund pursuant to the first paragraph of this Section, and the amount the Employer is obligated by this Agreement to contribute to the Midwest Operating Engineers Pension Fund shall be reduced by the amounts contributed to the Excess Benefit Fund pursuant to the determination of the Trustees of the Excess Benefit Fund.  The parties agree that the Midwest Operating Engineers Excess Benefit

68

Fund (a) will be a non-qualified defined contribution plan, (b) shall only provide benefits for people who are, at the time of benefit payments, retired under the Midwest Operating Engineers Pension Fund and who had benefit payments, retired under the Midwest Operating Engineers Pension Fund and who had benefit payments reduced in prior years on account of Internal Revenue Code Section 415, and (c) that such Excess Plan benefits will be payable only when and to the extent determined by the Trustees of the Excess Benefit otherwise rendered moot by legislative action, and all benefit payments under the Midwest Operating Engineers Pension Fund that were previously reduced on account of Section 415 have been made up through the Excess Benefit Fund or otherwise, this paragraph shall have neither force nor effect. In such event, the remaining articles of this collective bargaining agreement shall be unaffected, and shall otherwise remain in full force and effect.

**SECTION 3 - VACATION FUND**

Effective the 1st day of June, 2001, each Employer bound hereby shall pay ONE DOLLAR AND SIXTY CENTS ($1.60) per hour for each hour wages are received by an employee covered by this Agreement into the Local 150 I.U.O.E. Trusteed Vacation Savings Plan.

Effective the 1st day of June, 2002, each Employer bound hereby shall pay ONE DOLLAR AND SEVENTY CENTS ($1.70) per hour for each hour wages are receives by an employee covered by this Agreement into the Local 150 I.U.O.E. Trusteed Vacation Savings Plan.

Effective the 1st day of June, 2003, each Employer bound hereby shall pay ONE DOLLAR AND EIGHTY CENTS ($1.80) per hour for

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

each hour wages are received by an employee covered by this Agreement into the Local 150 I.U.O.E Trusteed Vacation Savings Plan.

Effective the 1st day of June, 2006, each Employer bound hereby shall pay ONE DOLLAR AND NINETY CENTS ($1.90) per hour for each hour wages are received by an employee covered by this Agreement into the Local 150 I.U.O.E. Trusteed Vacations Savings Plan.

For Apprentices, see schedule in Article XV, Section 2.

In computing the above amounts, the Employer is required to add the amount per hour to the employee's gross wages and then deduct the Social Security and Withholding tax from the gross figure on each check. The full amount shall then be set aside for remittance to the Vacation Savings Plan.

Each Employer bound hereby irrevocably appoints as his representative on the Board of Trustees as are named in the Agreement and Declaration of Trust as Employer Trustees and their successors duly appointed as therein set forth, and agrees to be bound by all the terms and provisions of the Agreement and Declaration of Trust, Local 150 I.U.O.E. Vacation Savings Plan, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.

Payments accompanied by monthly reports on forms provided for same are due in the Vacation Savings Plan Office, 6150 Joliet Road, Countryside, Illinois 60525, not later than the tenth (10th) day of the following month for the preceding month. Report forms are available at the above address. However, if payment is not in by the twentieth (20th) day of the month, it shall be considered a violation of this Agreement and the aforementioned Trust Agreement

70

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

and shall be liable for contributions due, liquidated damages, interest, and any other cost of collections.

Additional information and Employer code numbers can be obtained by the Vacation Savings Office, at 6150 Joliet Road, Countryside, Illinois 60525.


## ARTICLE XVII

### APPRENTICESHIP AND SKILL IMPROVEMENT FUND

A Trusteed Apprenticeship and Skill Improvement Fund has been created and is known as the Operating Engineers Local 150 Apprenticeship Fund.

Effective June 1, 2001, the Employer shall pay FORTY-FIVE CENTS ($0.45) for each hour the employee receives wages under the terms of this Agreement into the aforementioned Apprenticeship Fund.

Effective June 1, 2002, the Employer shall pay FIFTY CENTS ($0.50) for each hour the employee receives wages under the terms of this Agreement into the aforementioned Apprenticeship Fund.

Effective June 1, 2003, the Employer shall pay FIFTY-FIVE CENTS ($0.55) for each hour the employee receives wages under the terms of this Agreement into the aforementioned Apprenticeship Fund.

Effective June 1, 2004, the Employer shall pay SIXTY CENTS ($0.60) for each hour the employee receives wages under the terms of this Agreement into the aforementioned Apprenticeship Fund.

Effective June 1, 2005, the Employer shall pay SIXTY-FIVE CENTS ($0.65) for each hour the employee receives wages under the terms of this Agreement into the aforementioned Apprenticeship Fund.

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

Effective June 1, 2006, the Employer shall pay SEVENTY CENTS ($0.70) for each hour the employee receives wages under the terms of this Agreement into the aforementioned Apprenticeship Fund.

It is understood and agreed that the Employer shall be bound by the terms and provisions of the Agreement and Declaration of Trust of the Apprenticeship Fund, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.

The Employer further agrees to be bound by the terms of the Apprenticeship Standards established by the Joint Apprenticeship Training Committee of the Northern Illinois and Northern Indiana Apprenticeship and Skill Improvement Program, as approved by the United States Department of Labor, Bureau of Apprenticeship Training.

The Apprenticeship Fund has been established and shall be administered in accordance with the Labor Management Relations Act of 1947, as amended, and all other applicable Federal and State Laws.

Contributions of the Employer together with report forms supplied for such purpose are due in the Apprenticeship Fund Office not later than the tenth (10th) day of the following month.

Contributions to the aforesaid Apprenticeship Fund shall not constitute or be deemed wages due to the employee.

The sole liability of the Employer to the Apprenticeship Fund shall be the payment of hourly contributions as set forth in this Article, provided, however, that nothing herein shall be interpreted to release the Employer from its obligations under the Apprenticeship Standards as set forth above.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection.

## ARTICLE XVIII

**DUES CHECK OFF**

Upon receipt of a written check off authorization form from an employee, the Employer agrees to deduct each week the applicable initiation fees and monthly dues uniformly required for obtaining and maintaining membership in the Union from the pay of each employee covered by this Agreement and shall remit the same to the Union, no later than the tenth (10th) day of each month, together with an itemized statement of such deductions. No deductions shall be made which are prohibited by applicable law. Payments accompanied by monthly reports on forms provided shall be submitted to the Midwest Operating Engineers Fringe Benefit Fund, 6150 Joliet Road, Countryside, Illinois 60525. Report forms are available at the above address.

However, if payment is not received by the twentieth (20th) day of the month, it shall be considered a violation of this Agreement, and the Union shall be entitled for all contributions due, liquidated damages, interest, and any other cost of collections.

It is the intention of the parties that such deductions shall comply with the requirements of the Section 302(c) (4) of the Labor Management Relations Act of 1947, as amended, and that such deductions shall be made only pursuant to written assignments from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one

73

(1) year, or beyond the termination date of this Agreement, whichever occurs sooner.

The Union agrees to indemnify and hold harmless the Employer, from any claim, suit, cause of action, or otherwise as regards a creation of the Dues Deduction, its administration or any act or action in connection therewith and such indemnity and agreement to hold harmless shall include the payment of costs and attorney's fees in behalf of the beneficiaries of such indemnity.

## ARTICLE XIX

### INDUSTRY ADVANCEMENT FUND AND
### CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND

Effective June 1, 2001, the Employer shall pay EIGHTEEN CENTS ($0.18) per hour for each hour for which employees and supervisors receive wages under the terms of this Agreement into the Construction Industry Research and Service Trust Fund ("CRF").

Contributions of the Employer shall be forwarded to CRF in care of the Midwest Operating Engineers Fringe Benefit Funds, 6150 Joliet Road, Countryside, Illinois 60525 ("MOE"), together with report forms supplied for such purposes not later than the tenth (10th) day of the following month. It is understood and agreed that MOE will administer the collection and distribution of the CRF contributions and will receive a reasonable fee for that service, subject to approval of the Trustees of the CRF. The contributions to the aforesaid Construction Industry Research and Service Trust Fund shall not constitute or be deemed wages due to the employee.

Of the CRF contributions, SEVEN CENTS ($0.07) per hour for each hour for which contributions are made will be distributed to

74

the MARBA Industry Advancement Fund (MARBA), a not-for-profit corporation, and Excavators, Inc., a not-for profit corporation, to be divided with sixty percent (60%) to MARBA and forty percent (40%) to Excavators, Inc.; and ONE CENT ($0.01) per hour for each hour for which contributions are made will be distributed to the Construction Industry Service Corporation ("CISCO"), a not-for-profit corporation. The remaining TEN CENTS ($0.10) per hour for each hour for which contributions are made will be distributed by the CRF Trustees in accordance with the power and authority granted to them in the applicable CRF Agreement and Declaration of Trust.

Anything herein contained to the contrary notwithstanding, there is specifically excluded from the purposes of the CRF and/or any of the entities to which it distributes contributions, the right to use any of its funds for lobbying in support of anti-labor legislation and/or to subsidize contractors during a period of work stoppage or strikes. MARBA, Excavators, Inc. CISCO and all other recipients of CRF funds shall report annually to the CRF, giving a complete review of their activities and the activities of any of their members, including a certified audit showing the CRF disbursements. The CRF shall report annually to Local 150, IUOE, giving a complete review of its activities and a certified audit showing the Fund disbursements. Said review and audit to be furnished no later than May 1st of each year.

It is understood and agreed that the Employer shall be bound by the terms and provisions of the Agreement and Declaration of Trust of the Construction Industry Research and Service Trust Fund, and all amendments heretofore or hereafter thereto, as though the same were fully incorporated herein.

75

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest and any other costs of collection.

The administration of this Fund shall be solely in the hands of the CRF and no Employer shall pay or deliver any funds to any representative of his employees.   The Fund and the Trustees thereof agree to indemnify and hold harmless the Union, its officers, agents, representatives and members from any claim, suit, cause of action, or otherwise as regards a creation of the Fund, its administration or any act or action in connection therewith, and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees in behalf of the beneficiaries of such indemnity.

The Association agrees to indemnify and hold harmless the Union, its Officers, Agents, Representatives and Members from any claim, suit, cause of action, or otherwise as regards the collection and transaction of Industry Advancement Fund.

## ARTICLE XX

### SECTION 1 – PENALTY FOR FAILURE TO PAY PENSION AND/OR HEALTH AND WELFARE AND/OR VACATION CONTRIBUTIONS AND/OR DUES CHECK OFF

If any Employer upon forty-eight (48) hours written notice of default to the Employer fails to pay pension or health and welfare or vacation or dues check off contributions, the arbitration procedure herein provided for shall become inoperative and the Union shall be entitled to resort to all legal and economic

76

remedies, including the right to strike and picket until such failure to pay has been corrected.

Disputes as to the effectiveness or validity of employee dues deduction authorizations shall not subject a contractor to any right to strike provided for in this Article. The Union must be advised specifically of any such dispute within forty-eight (48) hours of written notice.

## SECTION 2 - PENALTY FOR FAILURE TO PAY WAGES

If any Employer fails to pay wages, the arbitration procedure herein provided for shall become inoperative and the Union shall be entitled to resort to all legal and economic remedies, including the right to strike and picket until such failure to pay has been corrected including penalties set out in Article XVI herein.

This clause shall be inoperative if the amount of wages is bonafidely disputed. In such instance, the Employer shall then pay the wages admitted to be due and the balance shall be settled by the arbitration procedure as provided herein.

## SECTION 3 - BONDING OF EMPLOYER

The Union, may at its discretion, demand a payment bond of any Employer guaranteeing payment of all earnings, vacation savings, welfare and pension benefit contributions which may become due.

## SECTION 4 - LEGITIMATE PICKET LINE

It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a

77

legitimate labor dispute or refuses to go through or work behind any picket line, including the picket line of the Union party to this Agreement and including picket lines at the Employer's place or places of business.    Furthermore, an employee may refuse to cross any picket line when he fears that bodily harm may be done to him.

## ARTICLE XXI

### CONTRACT REOPENER

In the event that the provisions of the Davis-Bacon Act, 40 U.S.C. & 276(a) and/or the provisions of the State of Illinois Prevailing Wage Act, 820 ILCS & 130 et. seq., are repealed or substantially modified in a manner which adversely affects the ability of signatory Employers to compete for State or Federal work, the parties to this Agreement agree to immediately reopen the Agreement and negotiate appropriate changes in terms and conditions of employment to maintain contractor competitiveness for such work.    In the event no agreement is reached after sixty (60) days of the commencement of such negotiations, then either party may resort to self-help, including but not limited to strikes, lockouts and unilateral implementation.

## ARTICLE XXII

### SAVINGS CLAUSE

Any provision contained herein that is contrary to or held to be in violation of the Labor Management Relations Act of 1947, or any federal or state law now in force or hereafter enacted, or hereafter becoming effective shall be void and of no force or effect, and this contract shall be construed as if said provision

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

herein were not a part hereof, it being intended, however, that the other provisions of this contract shall not be affected thereby.

It is further agreed that should compliance with any federal or state law, or amendment thereof, or any order or regulation issued thereunder, now or hereafter in force and effect prohibit the carrying out of any of the provisions of this Agreement, then to the extent of such deviation or prohibition, this Agreement shall be deemed to have been automatically amended, effective on the effective date of such law, order or regulation.

Such amendment to this contract shall remain in effect only so long as said law, amendment, order or regulation continues in force, or until the expiration of this Agreement, whichever event shall first occur.

### ARTICLE XXIII

**ENTIRE AGREEMENT OF THE PARTIES**

This represents the entire Agreement of the parties, it being understood that there is no other agreement or understanding, either oral or written.  The Employer understands that the Union is a fraternal society and as such, and in keeping with the provisions of the Labor Management Relations Act of 1947, as amended has the right to prescribe its own rules and regulations with respect to the acquisition or retention of membership in the Union or with respect to any other matters for its own use. However, such rules or regulations whether contained in a by-laws, constitution or otherwise shall have no effect directly or indirectly upon this collective bargaining agreement, any employment relationship or the relationship between the parties.

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

EFFECTIVE DATE - this Agreement shall become effective the 1st day of June, 2001, except as otherwise provided herein and remain in full force and effect until the 31st day of May, 2007, and shall thereafter continue from year to year, unless at least sixty (60) days prior to the expiration date, or as thereafter extended, either party hereto shall notify the other in writing of its intention to terminate.  It is contemplated that the parties will, in said sixty (60) days period meet with each other to negotiate a new agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement this 24 day of ___Oct_____ , 2001.

REPRESENTING THE:                    REPRESENTING THE:

EXCAVATORS, INC.                     INTERNATIONAL UNION OF OPERATING
                                     ENGINEERS, LOCAL 150, AFL-CIO

_____           _____

_____           _____

_____           _____

_____           _____

Excavators, Inc.
8603 Pyott
Lake In The Hills, Illinois 60102
815-356-6547
815-356-6548 (fax)

80

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

Illustrations and Definition of Piggybacking
and Staging of Electric Submersible Pumps as
applied in the Heavy and Highway and Building Agreement

Electric Submersible pumps may be physically connected to each other (piggyback) without causing any increase in discharge as calculated under this section.

Discharge of Electric Submersible pumps which are not piggy-backed but which are physically connected by hose, pipe, etc. or are otherwise staged shall be calculated separately and totaled in calculating total discharge under this section. (See illustration)



PIGGYBACK



STAGING

REPRESENTING THE:

MID-AMERICA REGIONAL
BARGAINING ASSOCIATION

REPRESENTING THE:

I.U.O.E. LOCAL UNION 150

81

**MEMORANDUM OF CLARIFICATION** regarding Application of Illinois Building/Heavy and Highway and Underground Agreements of Local 150 I.U.O.E. which expire on June 30, 1981 in their application to:

## SEWAGE PLANTS

This memorandum based on a site visit to the Aurora Sewage Plant, Montgomery, Illinois (See minutes Case No. 79-17 and Joint Grievance Committee Minutes, January 4, 1980,) (A. J. Lowe Co. vs. Local 150 I.U.O.E.) is effective July 15, 1980.

1. All sewer and watermain pipe outside of structure wall or building wall to be installed under the Heavy and Highway and Underground Agreement.

2. All sewer and watermain pipe inside a structure wall or building wall to be installed under the Illinois Building Agreement.

3. All air feed pipe and chemical feed pipe, even though installed underground, shall be installed under the Illinois Building Agreement.

MID-AMERICA REGIONAL             LOCAL 150 INTERNATIONAL
BARGAINING ASSOCIATION           UNION OF OPERATING ENGINEERS

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

The Union and the Association together shall create a competition committee.

This Committee shall consist of an equal number of members representing the Employer and Union with no less than three (3) persons from each group. The Union and/or Association may appoint alternate members.

The purpose of this committee shall be to consider and implement under appropriate circumstance and based on adequate economic justification modification of this Agreement to apply to specific projects and/or geographic areas to assure continue work opportunities for employees working under this Agreement.

FOR THE ASSOCIATION:                    FOR THE UNION:

Excavators Inc
HHU 9-8-01 Fal
Steven M. Cisco

## WORK CONTINUATION PROGRAM

In an effort to maintain a positive labor relations environment and a competitive union construction market in the Metropolitan Chicago Area, the contractor members represented by Mid-America Regional Bargaining Association (MARBA), their collective bargaining representative, and International Union of Operating Engineers Local 150 now agree as follows:

1.  The parties agree to exchange contract proposals at least 90 days prior to the expiration date of the contract.

2.  The parties agree to meet on a regular basis (to be determined) at least 30 days before expiration.

3.  After the expiration date, and for 30 days following, the parties will meet Mondays, Wednesdays and Fridays for a designated period of time (to be determined) until and agreement is reached.

4.  Any time after the expiration date an agreement is reached, it shall be retroactive back to the day after expiration.

5.  If after 30 days from expiration no agreement is reached, the Union retains the right to strike.


FOR THE ASSOCIATION:                    FOR THE UNION:

84

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

LETTER OF UNDERSTANDING BETWEEN I.U.O.E. LOCAL 150 AND

MID-AMERICA BARGAINING ASSOCIATION PERTAINING TO THE

HEAVY & HIGHWAY & UNDERGROUND AGREEMENT,

DISTRICTS 1, 2 & 3

DATED JUNE 1, 1987

Based on Article VIII, Section 1 where it says, "in the event a dispute arises over the applicability of preparation time, or oiler (Apprentice) requirements, due to the introduction of new models of machines or due to the manufacturer's or employer's de-rating or re-classification of any machine's size, lifting capacity, bucket capacity, or weight, a committee comprised of an equal number of representatives of the Union and the Association signatory hereto shall meet to make an equitable decision of the machine in question.

A dispute has arisen on a mining machine as to whether it is 5 ft. or over (Article VII, Section 10). The dispute is where to measure the machine to arrive at its proper size. After examining two like machines and arriving at two different diameters it was determined by the committee that the diameter of the shield should be the determining factor since it is the only part of the machine that the measurement remains constant.

FOR THE ASSOCIATION:                    FOR THE UNION:

85

Excavators Inc.
HHU 9-8-01 Fnl
Steven M. Cisco

MID-AMERICA REGIONAL BARGAINING ASSOCIATION

LABOR MANAGEMENT COMMITTEE

**TRENCHING MACHINES**

A question has been raised by an Employer as to the intent of the word "trenching" as listed in Article XV "Classifications" of the Heavy and Highway and Underground Agreement, Districts 1, 2 and 3, dated June 1, 1987.

The Employer feels the intent of this classification in Class I was for large wheel type trenching machines and does not include small chain type trenchers.  The Employer asks that under Article I, Section 2 Unlisted Equipment that chain type trenching machines be listed in Class IV.

After pictures and manufacturers brochures were reviewed by the Committee, the Committee by majority vote determined that chain type trenching machines, 12" and under, when used digging trenches for installation of telephone cable, TV cable, electric cable and natural gas services from the distribution line to the residence shall be included in Class IV.

FOR: MID-AMERICA REGIONAL
      BARGAINING ASSOCIATION

FOR: INTERNATIONAL UNION OF
      OPERATING ENGINEERS
      LOCAL 150, AFL-CIO

Excavators Inc
HHU 9-3-01 Fnl
Steven M. Cisco

LETTER OF UNDERSTANDING
BETWEEN I.U.O.E. LOCAL 150 AND
MID-AMERICA REGIONAL BARGAINING ASSOCIATION
PERTAINING TO THE
HEAVY & HIGHWAY & UNDERGROUND AGREEMENT,
DISTRICTS 1, 2 & 3
DATED JUNE 1, 2001

A dispute has arisen over the interpretation of Article V, Section 2 wage payment specifically where it reads "payday shall be once each week on a specified day during work hours", also Article III, Section 4A payday for employees during show-up time period and 4B payday for employees who are not required to work during call off.

It is the finding of the Committee that payroll checks delivered by mail, or other means, or direct deposit, to the employees place of residence, or financial institution on the prescribed payday is an acceptable means of wage payment.

FOR THE ASSOCIATION:                    FOR THE UNION:

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

## AWARD

After careful study of the record in its entirety, including all of the evidence and argument presented by both parties, the Arbitrator renders the following Award:

> The Employer did not violate Article III, Section 1, Subsection (c) "LUNCH PERIOD" of the Heavy, Highway and Underground Agreement when, on its Illinois Toll road job site, it operated a second shift utilizing some, but not all, machines utilized on the first shift and paid a one-half hour lunch period only to those first-shift employees whose machines were also actually operated on the second shift, rather than pay all first-shift employees a one-half hour lunch period.
>
> The grievance is denied.

Signed by me at Milwaukee, Wisconsin, this 23rd day of January, 1989.


                                        Steven Briggs

    The above decision by Steven Briggs of the American Arbitration Association is the result of a May 24, 1989, meeting of the M.A.R.B.A. Labor Management Committee. At this meeting, the Committee was unable to reach a majority decision and submitted the dispute to arbitration.

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

CONSTRUCTION INDUSTRY SERVICE CORPORATION
JOINT LABOR-MANAGEMENT
UNIFORM DRUG/ALCOHOL ABUSE PROGRAM

## I.   POLICY STATEMENT

The parties recognize the problems created by drug and alcohol abuse and the need to develop prevention and treatment programs. _____ COMPANY NAME, _____, and the signatory unions seek to protect people and property, and to provide a safe working environment. The purpose of the following program is to establish and maintain a drug free, alcohol free, safe, healthy work environment for all of its employees.

## II.   DEFINITIONS

A.   Company Premises – The term "Company Premises" as used in this policy include all property, facilities, land, buildings, structures, automobiles, trucks and other vehicles owned, leased or used by the company. Construction job sites for which the company has responsibility are included.

B.   Prohibited Items & Substances – Prohibited substances include illegal drugs (including controlled substances, look alike drugs and designer drugs), alcoholic beverages, and drug paraphernalia in the possession or for being used by an employee on the job.

C.   Employee – Individuals, who perform work for (COMPANY NAME) _____, including, but not limited to, management, supervision, engineering, craft workers and clerical personnel.

D.   Accident – Any event resulting in injury to a person or property to which an employee, or contractor/contractor's employee, contributed as a direct or indirect cause.

E.   Incident – An event which has all the attributes of an accident, except no harm was caused to person or property.

F.   Reasonable Cause – Reasonable cause shall be defined as excessive tardiness, excessive absenteeism, and erratic behavior such as noticeable imbalance, incoherence, and disorientation.

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

## III. CONFIDENTIALITY

A.   All parties to this policy and program have only the interests of employees in mind, therefore, encourage any employee with a substance abuse problem to come forward and voluntarily accept our assistance in dealing with the illness.   An employee assistance program will provide guidance and direction for you during your recovery period. If you volunteer for help, the company will make every reasonable effort to return to you to work upon your recovery.   The Company will also take action to assure that your illness is handled in a confidential manner.

B.   All actions taken under this policy and program will be confidential and disclosed only to those with a "need to know".

C.   When a test is required, the specimen will be identified by a code number, not by name, to insure confidentiality of the donor. Each specimen container will be properly labeled and made tamper proof.   The donor must witness this procedure.

D.   Unless an initial positive result is confirmed as positive, it shall be deemed negative and reported by the laboratory as such.

E.   The handling and transportation of each specimen will be properly documented through the strict chain of custody procedures.

## IV.   RULES-DISCIPLINARY ACTIONS-GRIEVANCE PROCEDURES

1.   RULES - All employees must report to work in a physical condition that will enable them to perform their jobs in a safe and efficient manner.   Employees shall not:

2.   DISCIPLINE - When the company has reasonable cause to believe an employee is under the influence of a prohibited substance, for reasons of safety, the employee may be suspended until test results are available.   If no test results are received after three (3) working days, the employee, if available, shall be returned to work with back pay.  If the test results prove negative, the employee shall be reinstated with back pay.   In all other cases:

Excavators Inc
HHU 9-8-01 Fnl
Steven M. Cisco

a. Applicants testing positive for drug use will not be hired.

b. Employees who have not voluntarily come forward, and who test positive for a drug use, will be terminated.

c. Employees who refuse to cooperate with testing procedures will be terminated.

d. Employees found in possession of drugs or drug paraphernalia will be terminated.

e. Employees found selling or distributing drugs will be terminated.

f. Employees found under the influence of alcohol while on duty, or while operating a company vehicle, will be subject to termination.

3. **PRESCRIPTION DRUGS** – Employees using a prescribed medication which may impair the performance of job duties, either mental or motor functions, must immediately inform their supervisor of such prescription drug use. For the safety of all employees, the company will consult with you and your physician to determine if a re-assignment of duties is necessary. The company will attempt to accommodate your needs by making an appropriate re-assignment. However, if a re-assignment is not possible, you will be placed on temporary medical leave until released as fit for duty by the prescribing physician.

4. **GRIEVANCE** – All aspects of this policy and program shall be subject to the grievance procedure of the applicable collective bargaining agreement.

V. **DRUG/ALCOHOL TESTING** – The parties to this policy and program agree that under certain circumstances, the company will find it necessary to conduct drug and alcohol testing. While "random" testing is not necessary for the proper operation of this policy and program, it may be necessary to require testing under the following conditions:

a. A pre-employment drug and alcohol test may be administered to all applicants for employment;

91

b.    A test may be administered in the event a supervisor has a reasonable cause to believe that the employee has reported to work under the influence, or is or has been under the influence while on the job; or has violated this drug policy. During the process of establishing reasonable cause for testing, the employee has the right to request his on-site representative to be present;

c.    Testing may be required if an employee is involved in a workplace accident/incident or if there is a workplace injury;

d.    Testing may be required as part of a follow-up to counseling or rehabilitation for substance abuse, for up to a one (1) year period;

e.    Employees may also be tested on a voluntary basis.

Each employee will be required to sign a consent and chain of custody form, assuring proper documentation and accuracy. If an employee refuses to sign a consent form authorizing the test, ongoing employment by the company will be terminated.

Drug testing will be conducted by an independent accredited laboratory (National Institute on Drug Abuse and/or College of American Pathology), and may consist of either blood or urine test, or both as required. Blood tests will be utilized for post accident investigation only.

The company will bear the costs of all testing procedures.

VI.   REHABILITATION AND EMPLOYEE ASSISTANCE PROGRAM

Employees are encouraged to seek help for a drug or alcohol problem before it deteriorates into a disciplinary matter. If an employee voluntarily notifies supervision that he or she may have a substance abuse problem, the company will assist in locating a suitable employee assistance program for treatment, and will counsel the employee regarding medical benefits available under the company or union health and welfare/insurance program.

If treatment necessitates time away from work, the company shall provide for the employee an unpaid leave of absence for

92

purposes of participation in an agreed upon treatment program.  An employee who successfully completes a rehabilitation program shall be reinstated to his/her former employment status, if work for which he/she is qualified exists.

Employees returning to work after successfully completing the rehabilitation program will be subject to drug tests without prior notice for a period of one year.  A positive test will then result in disciplinary action as previously outlined in this policy and program.

93

Excavators Inc
HHU-9-8-01 Fnl
Steven M. Cisco

**EXHIBIT C**

# INTERNATI AL UNION OF OPERA. G ENGINEERS

### LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M
#### AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

**WILLIAM E. DUGAN**
PRESIDENT-BUSINESS MANAGER



(708) 482-8800 · FAX (708) 482-7186
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

June 26, 2006

*Via Fax (847) 390-9203 and*
*CM 7005 1820 0001 6674 6160*

Mr. Joe Baldo
Prairie Rock Excavating L.L.C.
4345 DiPaolo Center
Glenview, Illinois 60025

RE:     Violation of the Excavators, Inc. Heavy and Highway and Underground Agreement
        Article XII – Hiring
        Union File No. 06-152

Dear Mr. Baldo:

We are advised that your company is in violation of various articles and sections, including but not limited to that captioned above, of the Excavators, Inc. Heavy and Highway and Underground Agreement (Districts 1-2-3), to which your Company and this Union are parties by virtue of a Memorandum of Agreement signed May 3, 2006.

We are further advised that the above-stated violation occurred on or about June 12-16, 2006, and June 19-20, 2006, on your construction site located at 5200 Armstrong Drive in Chicago, Illinois, within Local 150's jurisdictional territory, where your company was performing work with a non-bargaining unit employee. See attached Agent's Statement for further details, including damages owed in the current aggregate amount of **$3,340.96**.

In compliance with Step 1 of the Grievances and Arbitration clause of our Agreement, Article XIII, Section 1, our Business Representative, Tim Gorman, spoke with you by telephone, but the grievance remains unresolved. Therefore, in a further attempt to resolve this dispute, I have designated James McNally, Assistant to the President, to meet with your designated company officials at the Local Union office, 6200 Joliet Road, Countryside, Illinois 60525, on **Wednesday, July 19, 2006, at 1:45 p.m.** If the Company Officer cannot attend, please send a representative.

Alternatively, you may mail your settlement check to the attention of Steven M. Cisco at the above address prior to the date of hearing in the full amount of **$3,340.96 payable to IUOE Local 150 Assistance Fund.**


EXHIBIT
C

Prairie Rock Excavating L.L.C.
June 26, 2006
File No. 06-152
Page 2


It is in the best interest of your company to negotiate a settlement at the pre-grievance hearing. Many grievances are resolved at this meeting. If you do not attend the pre-grievance hearing or mail us your settlement check prior to that date and this matter remains unresolved, it will be automatically scheduled for the next meeting of the Joint Grievance Committee.

This Union shall continue to hold your Company liable for all appropriate remedies, including but not limited to any back wages and fringe benefits lost by all affected members of the bargaining unit who would be working had you honored our Agreement.

Sincerely,
William E. Dugan
PRESIDENT-BUSINESS MANAGER

*Steven M. Cisco/lmd*

By:    Steven M. Cisco
        Recording-Corresponding Secretary


SMC/lmd
Attachment

cc:    Tim Gorman, Business Representative – Dist. 1
        James McNally, Assistant to the President
        Dale D. Pierson, General Counsel
        Excavators, Inc.

# INTERNATI AL UNION OF OPERAT G ENGINEERS
LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M

AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

**WILLIAM E. DUGAN**
PRESIDENT-BUSINESS MANAGER



(708) 482-8800 - FAX (708) 482-7186
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

### STATEMENT OF BUSINESS AGENT

**TO:**   Steven M. Cisco
Recording-Corresponding Secretary

**RE:**   Prairie Rock Excavating L.L.C. – Violation of Article XII – Hiring of the Excavators, Inc.
Heavy and Highway and Underground Agreement

The company had a non-bargaining unit operator running a 320 CAT backhoe from June 12 through June 20, 2006, not including Saturday or Sunday.

Took pictures.

**Violation Dates:**   June 12-16, 2006 and June 19-20, 2006

**Relief Sought:**   Wages and fringe benefits for *Class I/Backhoe* to be paid to the IUOE Local 150 Assistance Fund

| | | | | |
|---|---|---|---|---|
| Wages | $39.75 x 8.0 Hours = | $ 318.00 | | |
| ½ Hour Prep Time | $59.63 x 0.5 Hours = | $ 29.82 | | |
| Fringe Benefits | $15.23 x 8.5 Hours = | $ 129.46 | | |
| | Subtotal | $ 477.28 | Per day | |
| | Times 7 days | x    7 | | |
| | **Total** | **$3,340.96** | **To be paid to the IUOE Local 150 Assistance Fund** | |

Tim Gorman, Business Representative – Dist. 1
June 20, 2006
File No. 06-152

**EXHIBIT D**

**JOINT GRIEVANCE COMMITTEE**
**INTERNATIONAL UNION of OPERATING ENGINEERS,**
**LOCAL 150, AFL-CIO**

**CO-CHAIRMAN**
Dave Snelten, President
Excavators, Inc.
8603 Pyott Road, Lake in the Hills, IL 60156
(815) 356-6547, (815) 356-6548 Fax

**CO-CHAIRMAN**
William E. Dugan, President-Business Manager
International Union of Operating Engineers, Local 150
6200 Joliet Road, Countryside, IL 60525
(708) 482-8800, (708) 588-1629 Fax

January 12, 2007

*Via Fax (847) 390-9203 and*
*CM 7005 3110 0003 7550 3817*
Mr. Joe Baldo
Prairie Rock Excavating, LLC
4345 DiPaolo Center
Glenview, IL 60025

RE:    Joint Grievance Committee Hearing
       File No. 06-152

Dear Mr. Baldo:

A hearing of the above-referenced grievance will be held at the local union office of **Local 150, International Union of Operating Engineers, 6200 Joliet Road, Countryside, Illinois,** at the time and date indicated below:

DATE:    **Thursday, January 25, 2007**
TIME:    **9:00 a.m.**

Please note that the Joint Grievance Committee may, by majority vote, reach a binding decision and may act in the absence of either party. The proceedings assure an opportunity to present matters in your behalf, including any documented evidence, records, witnesses, etc., and to rebut testimony of the Grievant or his Representative. Attached is a copy of the pre-grievance letter for your review.

Sincerely,

Steven M. Cisco
Recording-Corresponding Secretary

SMC/hca
Attachment
cc:    Joint Grievance Committee Co-Chairmen
       James McNally, Assistant to the President
       Dale D. Pierson, General Counsel
       Tim Gorman, Business Representative

EXHIBIT

exhibitsticker

D

**EXHIBIT E**

**JOINT GRIEVANCE COMMITTEE**
INTERNATIONAL UNION of OPERATING ENGINEERS,
LOCAL 150, AFL-CIO

| | |
|---|---|
| **CO-CHAIRMAN** | **CO-CHAIRMAN** |
| Dave Snelten, President | William E. Dugan, President-Business Manager |
| Excavators, Inc. | International Union of Operating Engineers |
| 8603 Pyott Road | Local 150, District 1 |
| Lake in the Hills, Illinois 60156 | 6200 Joliet Road, Countryside, Illinois 60525 |
| (815) 356-6547, (815) 356-6548 Fax | (708) 482-8800, (708) 588-1629 Fax |

January 26, 2007

*Via Fax (847) 390-9203 and*
*CM 7005 3110 0003 7554 2991*

Mr. Joe Baldo
Prairie Rock Excavating, LLC
4345 DiPaolo Center
Glenview, IL 60025

RE:    **Joint Grievance Committee Decision – File No. 06-152**

Dear Mr. Baldo:

This will confirm the decision of the Joint Grievance Committee in the above-referenced matter as announced following a hearing on January 25, 2007 at the local union office of Local 150, Operating Engineers, 6200 Joliet Road, Countryside, Illinois. Based on the testimony heard, the Committee by majority decision determined as follows:

1)    The Employer shall pay **$3,340.96 to the IUOE Local 150 Assistance Fund**.
2)    The check should be sent to Steven M. Cisco at Local 150, 6200 Joliet Road, Countryside, IL for distribution.

Your attention is directed to Article XIII, Section 1 of the Heavy and Highway and Underground Agreement which provides in part that: "Decision of the Joint Grievance Committee and Arbitration Awards shall be complied with within **seven (7) days** of receipt of the decision by the losing party. A party which fails to comply within the seven (7) day period shall be required to pay an **additional ten (10%) percent** of the amounts owed as liquidated damages for failure to comply with the decision or award. In the event the prevailing party is required to file suit to enforce the decision or award, and it prevails, it shall be entitled to recover its costs, including attorney's fees, from the losing party."

Sincerely,

Heidi C. Adams
Committee Secretary

HCA/hs
cc:    Co-Chairmen
       Steven M. Cisco, Recording-Corresponding Secretary
       James McNally, Assistant to the President
       Tim Gorman, Business Representative – Dist. 1
       Dale D. Pierson, General Counsel

**EXHIBIT**

E